MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

KAREN MILENA GUAUQUE
CASTIBLANCO and LEIDY VIVIAN
GUAUQUE CASTIBLANCO, *individually
and on behalf of others similarly situated,*

                                *Plaintiffs,*

        -against-

DON ALEX PERU, INC.  (D/B/A DON
ALEX), BBQ CHICKEN DON ALEX INC.
(D/B/A DON ALEX), BBQ CHICKEN DON
ALEX II INC. (D/B/A DON ALEX), DIAVI
OSORES, and GELSEN DOE,

                              *Defendants.*

-------------------------------------------------------X

                  **COMPLAINT**

     **COLLECTIVE ACTION UNDER**
        **29 U.S.C. § 216(b)**

             **ECF Case**

       Plaintiffs Karen Milena Guauque Castiblanco and Leidy Vivian Guauque Castiblanco, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Don Alex Peru, Inc. (d/b/a Don Alex), BBQ Chicken Don Alex Inc. (d/b/a Don Alex), BBQ Chicken Don Alex II Inc (d/b/a Don Alex), ("Defendant Corporations"), Diavi Osores and Gelsen Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

      1.     Plaintiffs are former employees of Defendants Don Alex Peru, Inc. (d/b/a Don Alex), BBQ Chicken Don Alex Inc. (d/b/a Don Alex), BBQ Chicken Don Alex II Inc (d/b/a Don Alex), Diavi Osores, and Gelsen Doe.

      2.     Defendants own, operate, or control a Peruvian Restaurant, located at 95-44 Roosevelt Avenue, Jackson Heights, New York, 11372 under the name "Don Alex", at 95-04 37th

Avenue, Jackson Heights, New York, 11372 under the name "Don Alex", and at 106-26 Corona

Avenue, Corona, NY 11368 under the name "Don Alex".

3.     Upon information and belief, individual Defendants Diavi Osores and Gelsen Doe,

serve or served as owners, managers, principals, or agents of Defendant Corporations and, through

these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.     Plaintiffs were employed as waitresses at the restaurants located at 95-44 Roosevelt

Avenue, Jackson Heights, New York, 11372, 95-04 37th Avenue, Jackson Heights, New York,

11372, and 106-26 Corona Avenue, Corona, NY 11368.

5.     Plaintiffs were ostensibly employed as waitresses. However, they were required to

spend a considerable part of their work day performing non-tipped duties, including but not limited

to sweeping, picking up trash, mopping, cleaning windows, bringing up sodas and juices, filling up

dressing, making shakes, picking up tables for sweeping, taking phone orders, packing food

deliveries, taking out the trash, restocking, and setting up (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of

40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation

for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked

and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or

for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any

day in which they had to work over 10 hours a day.

9.     Defendants employed and accounted for Plaintiffs as waitresses in their payroll, but

in actuality their duties required a significant amount of time spent performing the non-tipped duties

alleged above.

10.    Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

11.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as waitresses instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate Peruvian Restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

**PARTIES**

*Plaintiffs*

19.     Plaintiff Karen Milena Guauque Castiblanco ("Plaintiff Milena" or "Ms. Milena") is an adult individual residing in Queens County, New York.

20.     Plaintiff Milena was employed by Defendants at Don Alex from approximately October 31, 2019 until on or about November 20, 2019.

21.     Plaintiff Leidy Vivian Guauque Castiblanco ("Plaintiff Guauque" or "Ms. Guauque") is an adult individual residing in Queens County, New York.

22.     Plaintiff Guauque was employed by Defendants at Don Alex from approximately September 25, 2019 until on or about November 22, 2019.

*Defendants*

23.     At all relevant times, Defendants owned, operated, or controlled Peruvian Restaurants, located at 95-44 Roosevelt Avenue, Jackson Heights, New York, 11372 under the name "Don Alex", at 95-04 37th Avenue, Jackson Heights, New York, 11372 under the name "Don Alex," and at 106-26 Corona Avenue, Corona, NY 11368 under the name "Don Alex".

24.     Upon information and belief, Don Alex Peru, Inc. (d/b/a Don Alex) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 95-44 Roosevelt Avenue, Jackson Heights, New York, 11372.

25.     Upon information and belief, BBQ Chicken Don Alex Inc. (d/b/a Don Alex) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 95-04 37th Avenue, Jackson Heights, New York, 11372.

26.     Upon information and belief, BBQ Chicken Don Alex II Inc. (d/b/a Don Alex) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 106-26 Corona Avenue, Corona, NY 11368.

27.     Defendant Diavi Osores is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Diavi Osores is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Diavi Osores possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Gelsen Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gelsen Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Gelsen Doe possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the

wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

29.     Defendants operate Peruvian Restaurants located in multiple neighborhoods in Queens.

30.     Individual Defendants, Diavi Osores and Gelsen Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, Individual Defendants Diavi Osores and Gelsen Doe operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of their own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

36.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.    During 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

39.    Plaintiffs are former employees of Defendants who ostensibly were employed as waitresses. However, they spent over 20% of each shift performing the non-tipped duties described above.

40.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Karen Milena Guauque Castiblanco*

41.     Plaintiff Milena was employed by Defendants from approximately October 31, 2019 until on or about November 20, 2019.

42.     Defendants ostensibly employed Plaintiff Milena as a waitress.

43.     However, Plaintiff Milena was also required to spend a significant portion of her work day performing the non-tipped duties described above.

44.     Although Plaintiff Milena ostensibly was employed as a waitress, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

45.     Plaintiff Milena regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.     Plaintiff Milena's work duties required neither discretion nor independent judgment.

47.     Throughout her employment with Defendants, Plaintiff Milena regularly worked in excess of 40 hours per week.

48.     From approximately October 31, 2019 until on or about November 20, 2019, Plaintiff Milena worked from approximately 1:00 p.m. until on or about 11:30 p.m. to 11:45 p.m., on Mondays and from approximately 2:00 p.m. until on or about 11:30 p.m. to 11:45p.m., 4 days a week (typically 48.50 to 49.75 hours per week).

49.     Throughout her employment, Defendants paid Plaintiff Milena her wages in cash.

50.     From approximately October 31, 2019 until on or about November 20, 2019, Defendants paid Plaintiff Milena $40 per shift.

51.     Plaintiff Milena's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

52.     For example, Defendants required Plaintiff Milena to start working 1 hour prior her scheduled start time one day a week, and did not pay her for the additional time she worked.

53.     Plaintiff Milena was never notified by Defendants that her tips were being included as an offset for wages.

54.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Milena's wages.

55.     Plaintiff Milena was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

56.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Milena regarding overtime and wages under the FLSA and NYLL.

57.     Defendants did not provide Plaintiff Milena an accurate statement of wages, as required by NYLL 195(3).

58.     Defendants did not give any notice to Plaintiff Milena, in English and in Spanish (Plaintiff Milena's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Leidy Vivian Guauque  Castiblanco*

59.     Plaintiff Guauque was employed by Defendants from approximately September 25, 2019 until on or about November 22, 2019.

60.     Defendants ostensibly employed Plaintiff Guauque as a waitress.

61.     However, Plaintiff Guauque was also required to spend a significant portion of her work day performing the non-tipped duties described above.

62.     Although Plaintiff Guauque ostensibly was employed as a waitress, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

63.     Plaintiff Guauque regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

64.     Plaintiff Guauque's work duties required neither discretion nor independent judgment.

65.     Throughout her employment with Defendants, Plaintiff Guauque regularly worked in excess of 40 hours per week.

66.     For approximately one day on September 25, 2019, Plaintiff Guauque worked at the Corona Ave location from approximately 12:00 p.m. until on or about 6:00 p.m. for training.

67.     From approximately September 27, 2019 until on or about November 3, 2019, Plaintiff Guauque worked at the Roosevelt Ave location from approximately 1:00 p.m. until on or about 11:30 p.m., 1 day a week and from approximately 2:00 p.m. until on or about 11:30 p.m., 4 days a week (typically 48.5 hours per week).

68.     From approximately November 4, 2019 until on or about November 22, 2019, Plaintiff Guauque worked at the 37th Avenue location from approximately 9:30 a.m. until on or about 6:30 p.m., 1 day a week, from approximately 1:00 p.m. until on or about 11:30 p.m., 2 days a week, and from approximately 2:00 p.m. until on or about 11:30 p.m., 2 days a week (typically 49 hours per week).

69.     Throughout her employment, Defendants paid Plaintiff Guauque her wages in cash.

70.     From approximately September 25, 2019 until on or about November 22, 2019, Defendants paid Plaintiff Guauque $40 per shift.

71.     For her last day, Defendants did not pay Plaintiff Guauque any wages for her work.

72.     Plaintiff Guauque's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

73.     For example, Defendants required Plaintiff Guauque to work an additional half an hour past her scheduled departure time every day, and did not pay her for the additional time she worked.

74.     Defendants never granted Plaintiff Guauque any breaks or meal periods of any kind.

75.     Plaintiff Guauque was never notified by Defendants that her tips were being included as an offset for wages.

76.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Guauque's wages.

77.     Plaintiff Guauque was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

78.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guauque regarding overtime and wages under the FLSA and NYLL.

79.     Defendants did not provide Plaintiff Guauque an accurate statement of wages, as required by NYLL 195(3).

80.     Defendants did not give any notice to Plaintiff Guauque, in English and in Spanish (Plaintiff Guauque's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

81.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

82.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

83.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

84.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

85.     Defendants required Plaintiffs and all other waitresses to perform general non-tipped tasks in addition to their primary duties as waitresses.

86.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

87.     The Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

88.     These Plaintiffs and all other tipped workers were paid at a rate that was lower than the required lower tip-credit rate by Defendants.

89.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

90.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal

regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

91.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the required lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

92.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

93.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

94.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as waitresses for the tips they received. Defendants paid Plaintiffs their wages in cash.

95.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

96.     Plaintiffs were paid their wages in cash.

97.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

98.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

99.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

100.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

101.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

102.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

103.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were

employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

104.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

105.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

106.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

107.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

108.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

109.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

110.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

111.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

112.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

113.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

114.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

115.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

116.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

117.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

118.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

119.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

120.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

121.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

122.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

123.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

124.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

125.     Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

126.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

127.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

128.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

129.     Plaintiffs were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

130.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

131.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

132.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

133.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

134.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

135.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
May 18, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
          Michael Faillace [MF-8436]
          60 East 42nd Street, Suite 4510
          New York, New York 10165
          Telephone: (212) 317-1200
          Facsimile: (212) 317-1620
          *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 2, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Karen Milena Guauque Castiblanco

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                 *Karen M Guauque*

Date / Fecha:                      December 2, 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 2, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Leidy Vivian Guauque Castiblanco (a.k.a. Vivian)

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     2 de diciembre

*Certified as a minority-owned business in the State of New York*