UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KAREN MILENA GUAUQUE CASTIBLANCO,
and LEIDY VIVIAN GUAUQUE CASTIBLANCO,
*individually and on behalf of others similarly
situated*,

                          Plaintiffs,                        REPORT AND
                                                             RECOMMENDATION

              -against-                                      20 CV 2235 (MKB)(RML)

DON ALEX PERU, INC. d/b/a DON ALEX ,
BBQ CHICKEN DON ALEX INC. d/b/a
DON ALEX, BBQ CHICKEN DON ALEX
II INC. d/b/a/ DON ALEX, DIAVI
OSORES, and GELSEN DOE,

                          Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

              By order dated February 26, 2021, the Honorable Margo K. Brodie, United

States District Judge, referred plaintiffs' motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiffs' motion

be granted and that plaintiffs be awarded $27,950.76 in damages, plus pre-judgment interest,

post-judgment interest, and $7,120 in attorney's fees and costs.

## BACKGROUND AND FACTS

              Plaintiffs Karen Milena Guauque Castiblanco ("Milena") and Leidy Vivian

Guauque Castiblanco ("Guauque") (together, "plaintiffs") commenced this wage and hour action

on May 18, 2020, against defendants Don Alex Peru, Inc. d/b/a Don Alex, BBQ Chicken Don

Alex Inc. d/b/a Don Alex, BBQ Chicken Don Alex II Inc. d/b/a Don Alex (hereinafter,

"defendant corporations" or "Don Alex"), Diavi Osores, and Gelsen Doe (hereinafter,

"individual defendants") (all collectively, "defendants"), asserting claims under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL") §§ 190, *et seq.* (Complaint, dated May 18, 2020 ("Compl."), Dkt. No. 1.) Defendants Osores and Doe are alleged to be owners, managers, principals, and/or agents of Don Alex, a group of Peruvian restaurants located at 95-44 Roosevelt Avenue, Jackson Heights, New York, 95-04 37th Avenue, Jackson Heights, New York, and 106-26 Corona Avenue, Corona, New York. (Id. ¶¶ 2-3, 23, 27-28.) Defendants are alleged to have employed Milena and Guauque as servers from October 31, 2019 through November 20, 2019 and September 25, 2019 through November 22, 2019, respectively. (Id. ¶¶ 20, 22, 39.) All defendants were properly served with the summons and complaint. (See Affidavits of Service of Felix Correa, sworn to July 9, 2020, Dkt. Nos. 8-10; Affidavits of Service of Donald Delprete, sworn to July 17, 2020, Dkt. Nos. 16, 23.) Defendants have failed to answer or otherwise move with respect to the complaint.

Plaintiffs moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to the corporate defendants on August 28, 2020 and as to the individual defendants on February 18, 2021. (See Request for Certificate of Default, dated Aug. 28. 2020, Dkt. No. 12; Requests for Certificate of Default, filed Feb. 18, 2020, Dkt. Nos. 20-21.) On December 8, 2020, the Clerk of the Court noted the defaults of the corporate defendants, and on February 22, 2021, the Clerk of the Court noted the defaults of the individual defendants. (See Clerk's Entry of Default, dated Dec. 8, 2020, Dkt. No. 14; Clerk's Entries of Default, dated Feb. 22, 2021, Dkt. Nos. 24-25.) On February 26, 2021, plaintiffs moved for default judgment. (See Motion for Default Judgment, filed Feb. 26, 2021, Dkt. No. 26.) Chief Judge Brodie referred plaintiffs' motion to me on February 26, 2021. (See Order Referring Motion, dated Feb. 26, 2021.)

Plaintiffs move for default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay them the minimum hourly wage, (2) pay them overtime

compensation, (3) pay them spread of hours wages, and (4) provide proper wage notices and wage statements, all of which allegedly occurred from September through November 2019. (Compl. ¶¶ 106-135; Damages Chart, Dkt. No. 27-6, attached as Ex. F to the Declaration of Michael Faillace, Esq. in Support of Plaintiffs' Motion for Default Judgment, dated Feb. 25, 2021 ("Faillace Decl."), Dk. No. 27.)  Plaintiffs seek to recover unpaid minimum wages, overtime wages, spread of hours wages, liquidated damages, statutory damages, and pre-judgment interest.  (Faillace Decl. ¶ 71.)

DISCUSSION

A.  <u>Liability</u>

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 84 (2d Cir. 2009) (citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [the plaintiffs'] allegations establish [the defendants'] liability as a matter of law."  <u>Id.</u>

Plaintiffs have sufficiently pleaded factual allegations that give rise to liability for unpaid minimum wages under the FLSA and the NYLL (<u>see</u> Compl. ¶¶ 48-51, 66-71, 81-83, 107-112, 118-121), unpaid overtime wages under the FLSA and NYLL (<u>id.</u> ¶¶ 47-48, 51, 65-68, 72, 81-84, 114-116, 123-125), unpaid spread of hours wages under the NYLL (<u>id.</u> ¶¶ 48, 50-51, 66-68, 72, 81, 84, 127-129), and failure to provide proper wage statements and wage notices under the NYLL (<u>id.</u> ¶¶ 55-58, 77-80, 97, 101-102, 130-132, 134-135)  The extent to which plaintiffs can recover damages for these violations initially depends on whether: (1) their claims

3

were timely; (2) they are covered employees under the FLSA and the NYLL; and (3) defendants were plaintiffs' employers under the FLSA and NYLL.

    1.  <u>Timeliness</u>

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, plaintiffs allege they were employed by defendants and that non-payment of wages occurred from September through November 2019, well within two years of the filing of the complaint. I find that their claims under the FLSA are timely.

For plaintiff's claims to be timely under the NYLL, they must have arisen within the six years prior to the filing of the complaint.  <u>See</u> N.Y. LAB. LAW §§ 198(3), 663(3).  Because plaintiffs allege that they were employed by defendants and that defendants' non-payment of wages and failure to provide proper wage statements and wage notices occurred in 2019, I find that their claims are also timely under the NYLL.

    2.  <u>Coverage Under the FLSA and NYLL</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, plaintiffs must show that (1) they were defendants' employees, and (2) defendants were employers subject to the coverage of each statute.  First, under the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).  Here, Milena's allegations that she was hired by defendants on October 31, 2019 and worked at one of defendants' restaurants as a server five days per week through November 20, 2019 sufficiently demonstrate that she was defendants' employee.  (<u>See</u> Compl. ¶¶ 41, 48; Declaration of Karen Milena Guaque Castiblanco, dated Feb. 9, 2020 ("Milena Decl."), Dkt. No. 27-4, ¶¶ 12, 17.)  Similarly, Guauque's allegations that she

was hired by defendants on September 25, 2019 and worked at defendants' restaurants as a server five days a week through November 3, 2019 sufficiently establish that she was also defendants' employee.  (See Compl. ¶¶ 59, 66-68; Declaration of Leidy Vivian Guauque Castiblanco, dated Feb. 10, 2020 ("Guauque Decl."), Dkt. No. 27-5, ¶¶ 11, 16-18.)

Second, plaintiffs' allegations demonstrate that defendants were their employers. To establish that defendants are employers subject to the FLSA and NYLL, plaintiffs must show that defendants "possessed the power to control" their activities as workers considering the totality of pertinent "economic realit[ies]."[1]  Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citation and quotation marks omitted).  To evaluate the "economic reality" of an alleged employee-employer relationship, courts look to various factors, none of which is individually dispositive.  Id.  These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id.  In addition, the FLSA requires employees to show their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce.  See 29 U.S.C. § 206(a).

Here, plaintiffs' allegations implicate the four factors listed above, thereby substantiating an "economic reality" in which defendants "possessed the power to control" their activities.  Herman, 172 F.3d at 139.  Plaintiffs assert that all defendants had the power to hire and fire them.  (Compl. ¶¶ 27-28, 107, 118; Milena Decl. ¶ 10; Guauque Decl. ¶ 9.)  They aver that

---

[1] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

each defendant exercised substantial control over work conditions as well as the policies and practices for the employment and compensation of plaintiffs.  (Compl. ¶¶ 32, 36, 107, 118; Milena Decl. ¶ 10; Guauque Decl. ¶ 9.)  Further, plaintiffs generally allege that each individual defendant had the power to "determine[] the wages and compensation of the employees of Defendants, including Plaintiffs, establish[] the schedules of the employees, [and] maintain[] employee records." (Compl. ¶¶ 27-28.)  Thus, I find plaintiffs' allegations sufficiently establish that defendants were their employers.

Plaintiffs have also satisfied the FLSA's interstate commerce requirement.  To show they were "employed in an enterprise engaged in commerce," 29 U.S.C. § 206(a), plaintiffs allege that defendants, both separately and jointly, had annual gross sales greater than $500,000 during 2019 and that defendants and their enterprise were engaged in interstate commerce. (Compl. ¶¶ 37-38.)  Although this allegation is conclusory insofar as it restates the statutory definition of enterprise coverage while only providing the vague factual allegations that "numerous items that were used in the restaurants on a daily basis [we]re goods produced outside of the State of New York" (id. ¶ 38) and that plaintiffs both "regularly handled goods in interstate commerce, such as food and other supplies produced outside of the State of New York" (id. ¶¶ 45, 63), multiple courts in this district have held that similar conclusory allegations may establish liability in a motion for default judgment where plaintiffs handled goods or items that originated out-of-state.  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State. . . . Las Delicias requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and

6

more. It is also reasonable to infer that some of these materials moved or were produced in interstate commerce."); see also Newman v. W. Bar & Lounge, Inc., No. 20 CV 1141, 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021) ("[T]he court can reasonably infer that at least some materials handled by the plaintiff-employee have moved or engaged in interstate or international commerce, such as the food, beverages, products, materials, and equipment utilized by the defendants."); Acosta v. DRF Hosp. Mgmt. LLC, No. 18 CV 346, 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a restaurant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000" is sufficient to satisfy the interstate commerce requirement), report and recommendation adopted, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019).  I agree with courts that have adopted this approach, and I find that it is reasonable to infer that the food and restaurant supplies allegedly handled by defendants' employees "ha[d] been moved in or produced for [interstate] commerce."  (Compl. ¶¶ 38, 45, 63); 29 U.S.C. § 203(s)(1)(A)(i).  Plaintiffs have, therefore, sufficiently established that they are covered employees under both the FLSA and NYLL.

       3.   Joint and Several Liability

       Lastly, plaintiffs allege sufficient facts to establish that defendants were a single integrated enterprise for purposes of joint and several liability under both the FLSA and NYLL. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).  "In the context of a default, [joint and several] liability may be established based on limited detail about the relationship of defendants." Nuriddinov v. Masada

III, Inc., No. 15 CV 5875, 2017 WL 9253401, at *6 (E.D.N.Y. July 24, 2017) (citation omitted).

Here, plaintiffs allege that individual defendants Osores and Doe are owners, officers, and agents of the defendant corporations, and as such, "possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations." (Compl. ¶ 30; see also id. ¶¶ 27-28.) Further, plaintiffs allege that the defendant corporations and individual defendants are "joint employers" because they "act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees." (Id. ¶ 31.) These allegations demonstrate defendants' common ownership, management, and control of labor relations, which is "the central concern . . . underlying the single employer doctrine." Marin v. APU Foods Corp., No. 17 CV 3224, 2018 WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018) (internal quotation marks and citations omitted). Therefore, I respectfully recommend that defendants be held jointly and severally liable.

B. Damages

Plaintiffs request damages in the amount of $34,688. (See Faillace Decl. ¶¶ 46-47.) Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff[s] to establish [their] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

8

1.  Plaintiffs' Unpaid Wages

Plaintiffs allege that defendants willfully underpaid them in violation of the FLSA and NYLL by (1) not paying them the applicable minimum hourly rate, (2) not paying them overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, and (3) failing to pay them one additional hour's pay at the basic minimum wage for each day their spread of hours exceeded ten hours.  (Compl. ¶¶ 110-111, 114-115, 119-120, 123-124, 127.)  To compensate for these injuries, plaintiffs request (1) recovery of those wages, (2) liquidated damages equaling one-hundred percent (100%) of the unpaid wages, and (3) pre-judgment interest.  (Faillace Decl. ¶¶ 46-47.)

a.  *Minimum Wage*

In the absence of any records and in light of defendants' default, plaintiffs' recollections suffice to establish damages for unpaid wages.  "[W]hen an employer fails to maintain accurate records or where . . . no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff's recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (noting that where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

Here, Milena asserts that from October 31 to November 20, 2019, she worked from approximately 1:00 p.m. until 11:30 p.m. or 11:45 p.m. on Mondays and from approximately 2:00 p.m. until 11:30 p.m. or 11:45 p.m. for four other days per week, totaling 48.5 to 49.75 hours per week.  (Milena Decl. ¶ 17.)  Milena avers that she was paid a fixed salary of $40 per shift and that her wages did not vary even when she was required to stay later or work longer days.  (Id. ¶¶ 20-21.)  Guauque explains her hours as follows: on September 25, 2019 she worked from approximately 12:00 p.m. until 6:00 p.m.; from September 27, 2019 until November 3, 2019 she worked from 1:00 p.m. until 11:30 p.m. one day a week and from 2:00 p.m. until 11:30 p.m. four days a week; and from November 4, 2019 until November 22, 2019 she worked from 9:30 a.m. until 6:30 p.m. one day a week, from 1:00 p.m. until 11:30 p.m. two days a week, and from 2:00 p.m. until 11:30 p.m. two other days a week,  (Guauque Decl. ¶¶ 16-18). Guauque avers that she typically worked 48.5 or 49 hours per week.  (Id.  ¶¶ 17-18.)

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work.  29 U.S.C. § 206; N.Y. Lab. L. § 652.  The FLSA required defendants to pay plaintiffs a minimum hourly wage of $7.25 at all relevant times.  29 U.S.C. § 206(a)(1).  But New York law obligated defendants to pay plaintiffs a minimum hourly wage of $15.00.[2]  N.Y. LAB. LAW § 652(a)(i).  Because New York's wage is higher, plaintiffs may recover that amount.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

---

[2] This is the minimum wage for "large employers" in 2019. Plaintiffs provide no allegations as to how many employees worked for defendants. However, they use the minimum wages applicable to "large employers"—defined as "[e]very employer of eleven or more employees," N.Y. Lab. L. § 652(1)(a)(i)—in their damages calculations. (See Damages Chart.)  Given plaintiffs' allegation that Don Alex had over $500,000 in gross annual sales (Compl. ¶ 37) and operated three restaurants (id. ¶ 23), it can be inferred that defendants employed at least eleven people.

To determine whether defendants paid plaintiffs at least minimum wage, it is first necessary to determine their "regular hourly rate of pay."  As employees of a restaurant, plaintiffs are subject to New York's Hospitality Industry Wage Order ("Order").  See generally N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12 § 146.  Under the Order, an "employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings ... by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  Id. § 146-3.5(b); see also Long Lin v. New Fresca Tortilla, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).  Both plaintiffs received a weekly pay of $200. (See Damages Chart; Milena Decl. ¶ 20; Guaque Decl. ¶ 21.)  Plaintiff Milena worked 49 hours per week and plaintiff Guaque, depending on the time period, worked either 48.5 or 49 hours per week.  (See Damages Chart; Milena Decl. ¶ 17; Guaque Decl. ¶¶ 17-18.)  Accordingly, their regular hourly rate of pay is calculated using 40 hours.  Based on the calculations in the below table, I find that defendants did not pay plaintiffs the New York minimum wage during the time periods at issue.

| Regular Hourly Rate of Pay Calculations for Plaintiff Milena | | | | | |
|---|---|---|---|---|---|
| Time Period | Minimum Wage | Weekly Wage | Effective Hours Per Week | Regular Hourly Rate of Pay | Difference Between Minimum Wage & Regular Hourly Wage |
| 10/31/2019 – 11/20/2019 | $15.00 | $200.00 | 40 | $5.00 | $10.00 |

| Regular Hourly Rate of Pay Calculations for Plaintiff Guaque | | | | | |
|---|---|---|---|---|---|
| Time Period | Minimum Wage | Weekly Wage | Effective Hours Per Week | Regular Hourly Rate of Pay | Difference Between Minimum Wage & Regular Hourly Wage |

| 09/25/2019 – 11/22/2019 | $15.00 | $200.00 | 40 | $5.00 | $10.00 |
| --- | --- | --- | --- | --- | --- |

To calculate the damages that plaintiffs incurred as a result of defendants' failure to pay New York's minimum wage, the difference between the applicable minimum wage and each plaintiff's regular hourly wage is multiplied by forty.  See Long Lin, 2019 WL 3716199, at *3.  This number is then multiplied by the number of weeks each plaintiff worked during the time periods at issue.

| Unpaid Minimum Wage Calculations for Plaintiff Milena | | | | |
| --- | --- | --- | --- | --- |
| Time Period | Difference Between Minimum Wage & Regular Hourly Wage | Weekly Minimum Wage Shortfall | Number of Weeks | Period Minimum Wage Shortfall |
| 10/31/2019 – 11/20/2019 | $10.00 | $400.00 | 3 | $1,200.00 |
| | | | **TOTAL DUE**: | $1,200.00 |

| Unpaid Minimum Wage Calculations for Plaintiff Guauque | | | | |
| --- | --- | --- | --- | --- |
| Time Period | Difference Between Minimum Wage & Regular Hourly Wage | Weekly Minimum Wage Shortfall | Number of Weeks[3] | Period Minimum Wage Shortfall |
| 09/25/2019 – 11/22/2019 | $10.00 | $400.00 | 8.4 | $3,360 |
| | | | **TOTAL DUE**: | $3,360.00 |

Based on the calculations in the above tables and plaintiffs' Damages Chart, I respectfully recommend that plaintiffs be awarded a total of $4,560 in unpaid minimum wages, with $1,200

---

[3] My count of the days in each time period differs from the Damages Chart. I have adjusted the number of weeks and calculations accordingly.

12

to Milena and $3,360 to Guauque.[4]

      b. *Overtime Wages*

Next, plaintiffs allege that defendants violated the FLSA and NYLL by failing to pay them overtime wages.  (Compl. ¶¶ 114-115; 123-124; Milena Decl. ¶¶ 21-24; Guauque Decl. ¶¶ 22-24, 26.)  Plaintiffs are entitled to overtime compensation under the FLSA and NYLL at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES T. & REGS. tit. 12, § 142-2.2.  "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'"  Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).  The method for calculating overtime is the same under both statutes, but plaintiffs may not receive double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).  Because plaintiffs' recovery will be greater under the NYLL, damages will be calculated based on their NYLL unpaid wages claim.

---

[4] Although plaintiffs did not state the income they earned from tips while working for defendants, this omission is irrelevant in the context of defendants' default.  In order to reduce an employee's minimum wages by the amount of his or her income from gratuities, state and federal law strictly require employers to: (1) inform employees that they intend to credit tips toward employees' minimum wages, and (2) allow employees to retain all of their income from tips.  29 U.S.C. § 203(m); N.Y.C.R.R. tit. 12, § 146-1.3 (2011); see also Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011) (citing Padilla v. Malapaz, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009)); Chung v. Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002).  The facts before me do not show that defendants gave plaintiffs notice that their minimum wages would be reduced by their tip income.  On the contrary, plaintiffs allege that defendants never notified them that their tips were being included as an offset for wages and that defendants did not account for these tips in any daily or weekly accounting of plaintiffs' wages.  (Compl. ¶¶ 53, 75; Milena Decl. ¶ 25; Guauque Decl. ¶ 27; Faillace Decl. ¶¶ 22, 38.)  Because at least one (and possibly both) of the prerequisites for a tip credit are not satisfied, plaintiffs' tip income should not detract from their damages for unpaid minimum wages.

Plaintiffs allege that although they consistently worked between 48.5 and 49 hours per week, defendants never paid them overtime compensation.  (See Compl. ¶¶ 48, 66-68, 81; Milena Decl. ¶¶ 23-24; Guauque Decl. ¶¶ 24, 26.)  To calculate the overtime compensation they are owed, the number of hours each plaintiff worked over forty each week is multiplied by 150% of the higher of (i) their regular rate of pay, or (ii) the applicable minimum wage.  See Long Lin, 2019 WL 3716199, at *3.  This results in the amount of overtime compensation owed to each plaintiff on a weekly basis.  To obtain the total overtime compensation owed for each time period, the weekly amount is multiplied by the number of weeks in that time period.

| Overtime Calculations for Plaintiff Milena | | | | | |
|---|---|---|---|---|---|
| Time Period | Hours Over | 150% of Min. Wage Due | Weekly Overtime Due | Number of Weeks | Period Overtime Due |
| 10/31/2019 – 11/20/2019 | 9 | $22.50 | $202.50 | 3 | $607.50 |
| | | | | **TOTAL DUE**: | $607.50 |

| Overtime Calculations for Plaintiff Guauque | | | | | |
|---|---|---|---|---|---|
| Time Period | Hours Over | 150% of Min. Wage Due | Weekly Overtime Due | Number of Weeks | Period Overtime Due |
| 09/25/2019 – 11/03/2019 | 8.5 | $22.50 | $191.25 | 5.7 | $1,090.13 |
| 11/04/2019 – 11/22/2019 | 9 | $22.50 | $202.50 | 2.7 | $546.75 |
| | | | | **TOTAL DUE**: | $1,636.88 |

Based on the calculations in the above tables, I respectfully recommend that plaintiffs be awarded a total of $2,244.38 in unpaid overtime wages, with $607.50 to Milena and $1,636.88 to Guauque.

      c.   *Spread of Hours*

Plaintiffs also seek spread of hours pay under the NYLL.  (Compl. ¶ 127.)  "The spread of hours is the length of the interval between the beginning and end of an employee's

14

workday."  N.Y.C.R.R. tit. 12, § 146-1.6(a).  "On each day on which the spread of hours exceeds

10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."  Id.

Thus, for each day plaintiffs worked a shift of more than ten hours, plaintiffs are entitled to an

additional hour of pay at the minimum wage rate.  According to plaintiffs, both Milena and

Guauque worked a shift of more than ten hours one day per week.  (Damages Chart; Milena

Decl. ¶ 17; Guauque Decl. ¶¶ 17-18.)  I therefore respectfully recommend that plaintiffs be

awarded a total of $171 in spread of hours wages, with $45 to Milena and $126 to Guauque.

| Spread of Hours Calculations for Plaintiff Milena | | | | |
|---|---|---|---|---|
| Time Period | Days per Week | Min. Wage Rate | Number of Weeks | Amount Due for Period |
| 10/31/2019 – 11/20/2019 | 1 | $15.00 | 3 | $45.00 |
| | | | TOTAL DUE: | $45.00 |

| Overtime Calculations for Plaintiff Guauque | | | | |
|---|---|---|---|---|
| Time Period | Days per Week | Min. Wage Rate | Number of Weeks | Amount Due for Period |
| 09/25/2019 – 11/22/2019 | 1 | $15.00 | 8.4 | $126.00 |
| | | | TOTAL DUE: | $126.00 |

2.  Liquidated Damages

Plaintiffs additionally request liquidated damages for their unpaid minimum

wages, overtime wages, and spread of hours under both the FLSA and NYLL.  (See Faillace

Decl. ¶¶ 64-66.)  But, based on their damages chart, it appears plaintiffs are only seeking

liquidated damages under the NYLL.  (Damages Chart); see also Rana v. Islam, 887 F.3d 118,

119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under

both the FLSA and NYLL for the same time period).  Because the NYLL provides a greater

15

amount of recovery, I respectfully recommend awarding liquidated damages pursuant to the NYLL.  See Rana, 887 F.3d at 119; Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *13 (E.D.N.Y. Feb. 19, 2014).

The NYLL allows plaintiffs to recover liquidated damages in the amount of one hundred percent of unpaid minimum wages and overtime wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL §§ 198(1-a), 663; see Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).  The NYLL also authorizes liquidated damages for spread of hours claims.  See, e.g., Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016).

Here, defendants have not answered or otherwise appeared his action, much less demonstrated a "good faith" basis for believing the "underpayment" of wages was lawful.  I accordingly recommend that plaintiffs be awarded liquidated damages totaling $6,975.38: $4,560 for their unpaid minimum wages, $2,244.38 for their unpaid overtime, and $171 for their unpaid spread of hours wages.

3.  Wage Notices

Plaintiffs also each seek $5,000 in statutory damages for defendants' failure to provide wage notices.  New York's Wage Theft Prevention Act ("WTPA") requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances."  N.Y. LAB. LAW § 195(1).  Employers are required to provide such written wage notices "at the time of hiring."  2014 N.Y. Laws ch. 537 § 1, amending N.Y. LAB. LAW § 195(1-a).  Plaintiffs both assert

16

that they did not receive wage notices from defendants when they were hired.  (Milena Decl. ¶¶ 27-28; Guauque Decl. ¶¶ 30-31; Compl. ¶¶ 56-58, 78-80, 131-132.)  Statutory damages under the WTPA are $50 per day, up to a maximum of $5,000.  N.Y. LAB. LAW § 198(1-b)).  Based on plaintiffs' declarations, Milena worked for defendants for twenty-one (21) days and Guauque worked for defendants for fifty-nine (59) days.  (See Milena Decl. ¶ 12; Guauque Decl. ¶ 11.)  As such, I find both plaintiffs are entitled to statutory damages for wage notice violations, with Milena receiving $1,050 and Guauque receiving $2,950.

        4.   <u>Wage Statements</u>

        In addition to the wage notice requirement, "[e]mployers are also required to provide employees with a wage statement with each payment of wages."  <u>Pastor v. Alice Cleaners, Inc.</u>, No. 16 CV 7264, 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing N.Y. LAB. LAW § 195(3)).  Each wage statement must list, among other things, the dates of work covered by the payment of wages, the rate of pay and basis thereof, gross wages, applicable deductions, and allowances claimed as part of the minimum wage.  N.Y. LAB. LAW § 195(3).  Plaintiffs both allege that they never received such wage statements.  (Milena Decl. ¶¶ 27-28; Guauque Decl. ¶¶ 30-31; Compl. ¶¶ 56-58, 78-80, 134-135.)  As of February 27, 2015, "an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000."  <u>Pastor</u>, 2017 WL 5625556, at *5 (citing N.Y. LAB LAW § 198(1–d)).  Since both plaintiffs worked more than twenty days, I find that Milena and Guauque are each entitled to $5,000 for wage statement violations.

        5.   <u>Pre-judgment Interest</u>

        Lastly, plaintiffs request pre-judgment interest.  Plaintiffs may recover both pre-judgment interest and liquidated damages under the NYLL because the measures serve the two

distinct purposes of "compensate[ing] a plaintiff for the loss of use of money" and "a penalty," respectively.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted); see also Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 243 (S.D.N.Y. 2020).  The calculation of pre-judgment interest is based on unpaid wages, not liquidated damages.  Fermin, 93 F. Supp. 3d at 49 (quoting Mejia v. East Manor USA Inc., No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), report and recommendation adopted, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).  Nor is pre-judgment interest calculated on statutory damages for failure to provide wage notices and statements.  See Feuer v. Cornerstone Hotels Corp., No. 14 CV 5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 21, 2020) (citing Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir. 2018)).

The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date.  Id. § 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49; Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

Here, the midpoint of Milena's employment was November 10, 2019 and the midpoint of Guauque's employment was October 24, 2019.  (See Milena Decl. ¶ 12; Guauque Decl. ¶ 11.)  I therefore respectfully recommend that pre-judgment interest be awarded on Milena's unpaid wages of $1,852.50 from November 10, 2019 to the date of this court's judgment at a per diem interest rate of $0.46 ($1,852.50 x 0.09/365) and on Guauque's unpaid wages of $5,122.88 from October 24, 2019 to the date of this court's judgment at a per diem interest rate of $1.26 ($5,122.88 x 0.09/365).

18

6.   Post-judgment Interest

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961(a).

Section 1961 provides that "interest shall be allowed on any money judgment in a civil case

recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated

"from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

for the calendar week preceding[ ] the date of the judgment."  Id.  Accordingly, I respectfully

recommend that plaintiffs be awarded statutory post-judgment interest.  See Fermin, 93 F. Supp

3d at 53 (finding that post-judgment interest is mandatory).

C.   Attorney's Fees and Costs

As the prevailing parties, plaintiffs are entitled to recover reasonable attorney's

fees and costs under both the FLSA and the NYLL.  See 29 U.S.C. § 216(b), N.Y. LAB. LAW

§§ 198, 663(1).  Plaintiffs seek an award of $6,985 in attorney's fees and $990 in costs. (See

Faillace Decl. ¶ 68.)

District courts have "considerable discretion in determining what constitutes

reasonable attorney's fees in a given case."  Barfield v. New York City Health & Hosps. Corp.,

537 F.3d 132, 151 (2d Cir. 2008).  When exercising their discretion to determine the

reasonableness of attorney's fees, courts in this Circuit use the "presumptively reasonable fee"

standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183,

190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the

product of a reasonable hourly rate and the reasonable number of hours required by the case."

Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and

19

contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiffs have satisfied this requirement.  (See Attorney Bill and Costs, attached as Ex. G to Faillace Decl., Dkt. No. 27-7.)

The court next assesses whether plaintiffs' counsel requests a reasonable hourly rate.  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  A judge may determine prevailing rates based on evidence presented or his or her own knowledge of rates charged in the community.  Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).  The "community" is generally considered to be the district where the court sits.  See Arbor Hill, 522 F.3d at 190.  Further, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." Id. at 184 n.2 (citations omitted).

Plaintiffs' counsel requests hourly rates of $450 for Michael Faillace, $350 for Clifford Tucker, and $125 for each of the paralegals.  (See Faillace Decl. ¶ 70; Attorney Bill and Costs.)  I find the requested rate for Mr. Faillace reasonable.  Mr. Faillace is the managing member of Michael Faillace & Associates, P.C., and has practiced for thirty-eight years with a specialty in employment law.  (Faillace Decl. ¶ 70.)  The requested rate of $450 per hour is

commensurate with the rates routinely awarded in this district to attorneys with comparable

backgrounds and experience.  See Martinez v. New 168 Supermarket LLC, No. 19 CV 4526,

2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (noting that courts in this district typically

award hourly rates ranging from $300 to $450 for partners), report and recommendation adopted,

2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020); Rodriguez v. Yayo Rest. Corp., No 18 CV 4310,

2019 WL 4482032, at *9 (E.D.N.Y. Aug. 23, 2019) (recommending $450 hourly rate for an

attorney with thirty-six years' experience), report and recommendation adopted, 2019 WL

4468054 (E.D.N.Y. Sept. 18, 2019).  I find, however, that the rates requested for Mr. Tucker and

the paralegals are unreasonably high. Mr. Tucker is an associate at Michael Faillace &

Associates, P.C., and has been practicing personal injury and civil rights law for eight years.

(Faillace Decl. ¶ 70.)  The requested rate of $350 is higher than typically awarded in this district

to associates with similar backgrounds and experience.  See, e.g., Lopez v. 1923 Sneaker, Inc.,

No. 18 CV 3828, 2021 WL 1845057, at *10 (E.D.N.Y. Mar. 5, 2021) (explaining that in the

Eastern District of New York senior associates are usually awarded rates from $200 to $325),

report and recommendation adopted, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); Gunter v.

Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 CV 1804, 2021 WL 966147 (E.D.N.Y. Feb.

25, 2021) (finding rate of $375 for an attorney with thirteen years of experience

reasonable), report and recommendation adopted, 2021 WL 964921 (E.D.N.Y. Mar. 15, 2021);

Martinez, 2020 WL 5260579, at *8 (noting that courts in this district routinely approve hourly

rates of $200 to $325 for senior associates).  Similarly, the requested rate of $125 for the

paralegals' work is higher than typically awarded in this district.  See, e.g., Martinez, 2020 WL

5260579, at *8 (noting that courts in this district routinely approve hourly rates of $70 to $100

for paralegals); Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 CV 126, 2019 WL

3937126, at *15 (E.D.N.Y. July 3, 2019) (same); Hernandez v. Delta Deli Mkt. Inc., No. 18 CV

00375, 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (explaining that courts in this district

have found that $90 to $100 is a reasonable hourly rate for paralegals).  Therefore, I respectfully

recommend that Mr. Tucker's rate be reduced to $300 per hour and the paralegals' rate be

reduced to $100 per hour.

        The court next looks to the reasonableness of the hours billed.  To determine the

reasonableness of the hours spent on the litigation, the court must make "a conscientious and

detailed inquiry into the validity of the representations that a certain number of hours were

usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195,

2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d

131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed,

a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v.

Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  The court may exclude those hours that it finds

excessive, redundant, or otherwise unnecessary.  See Gordon v. Site 16/17 Dev., LLC, No. 11

CV 427, 2011 WL 3251520, at *6 (S.D.N.Y. July 28, 2011).  In lieu of an itemized reduction,

the court may make an across-the-board percentage reduction.  See Kirsch v. Fleet Street, Ltd.,

148 F.3d 149, 173 (2d Cir. 1998).

        Here, plaintiffs' counsel seeks compensation for 23.8 hours of work.  Of the total,

Mr. Faillace worked 3.6 hours, an attorney denoted as "CK"—who I presume is Mr. Tucker—

worked 12.5 hours, the paralegals worked 7.6 hours, and an unaccounted-for attorney denoted as

"JA" worked .1 hours.  (See Attorney Bill and Costs.)  Having reviewed the submitted time

records, I find the claimed number of hours reasonable except for the .1 hours billed by the

unidentified attorney.  See, e.g., Fermin, 93 F. Supp. 3d (accepting 26.4 hours of billed attorney

Case 1:20-cv-02235-MKB-RML   Document 30   Filed 08/20/21   Page 23 of 24 PageID #: 176

work as reasonable in a default judgment FLSA case).  Accordingly, I respectfully recommend

that plaintiffs be awarded $6,130.00 in attorney's fees, consisting of $1,620 for Mr. Faillace's

fees ($450 × 3.6 hours), $3,750 for Mr. Tucker's fees ($300 × 12.5 hours), and $760 for the

paralegals' fees ($100 × 7.6 hours).

Plaintiffs additionally request compensation for $990 in costs, representing $400

for this court's filing fee and $590 in service of process fees.  (See Attorney Bill and Costs.)

"Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and

photocopying."  Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL

4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and

recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-

Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiffs have submitted sufficient

documentary evidence for these costs.  (See Attorney Bill and Costs.)  Accordingly, I find

plaintiffs' requested costs to be reasonable out-of-pocket expenses.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs' motion be

granted and that default judgments be entered against all defendants jointly and severally.

Regarding damages, I respectfully recommend that plaintiffs be awarded a total of $27,950.76,

as follows:

| | Unpaid Wages | Liquidated Damages | Statutory Damages | Total Damages |
|---|---|---|---|---|
| *Milena* | $1,852.50 | $1,852.50 | $6,050 | $9,755 |
| *Guaque* | $5,122.88 | $5,122.88 | $7,950 | $18,195.76 |

I further recommend that pre-judgment interest be awarded on Milena's unpaid wages of

$1,852.50 from November 10, 2019 to the date of entry of judgment at a per diem interest rate of

23

$0.46 and on Guauque's unpaid wages of $5,122.88 from October 24, 2019 to the date of entry

of judgment at a per diem interest rate of $1.26. I also recommend that post-judgment interest be

awarded to both plaintiffs at the rate set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that

plaintiffs receive $6,130 in attorney's fees and $990 in costs.

Plaintiffs are directed to serve copies of this Report and Recommendation on

defendants by regular mail, and to file proof of service with the court within ten days of this

Report and Recommendation.  Any objections to this Report and Recommendation must be filed

electronically or with the Clerk of the Court, with courtesy copies to Chief Judge Brodie and to

my chambers, within fourteen (14) days.  Failure to file objections within the specified time

waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).

Respectfully submitted,

_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      August 20, 2021